## WINSHIP *vs.* PITTS.

The court of chancery only interferes to prevent future waste; except in cases where there are some special grounds for equitable interference as to waste already committed.

In ordinary cases, the account for waste already committed is merely incidental to the relief by injunction against future waste, and is directed upon the principle of preventing a needless multiplication of suits.

It is not waste for a tenant to erect a new edifice upon the demised premises, provided it can be done without destroying or materially injuring the buildings or other improvements already existing thereon. But the tenant has no right to pull down valuable buildings, or to make improvements or alterations which will materially and permanently change the nature of the property, so as to render it impossible for him to restore the same premises, substantially, at the expiration of the term.

The ancient doctrines of the common law in relation to waste have been relaxed in favor of modern tenancies, particularly as to buildings erected for the purposes of trade and manufacture.

Where a bill is filed before a vice chancellor for an injunction, and after hearing both parties thereon, he refuses to allow the injunction, it is irregular to bring the same question before the chancellor by a new bill, while the former suit is pending before the vice chancellor.

In February, 1830, the complainant leased to the defendant a house and lot, at the corner of Rivington street and the

May 1.

Bowery, in the city of New-York, for the term of eight years from the first of May thereafter. The lease contained only the usual covenants to pay the rent, taxes and assessments, and to deliver up the possession of the premises at the end of the time, in good tenantable repair, &c. At the time of the execution of the lease, there was a dwelling house upon that part of the lot which fronts upon the Bowery, the lower room of which was fitted up and occupied as a druggist store. But the rear of the lot was vacant land, and only used as a yard or enclosure for the accommodation of the house. In March last the defendant concluded to erect a brick dwelling upon the rear of the lot adjoining Rivington street ; and he made an agreement to under-let the same for the residue of the term, to be used as a livery stable. He accordingly took up the fence upon that part of the lot, and commenced the erection of the building. The complainant thereupon filed a bill before the vice chancellor of the first circuit, and applied for an injunction to restrain him from proceeding with the building. Upon the hearing of both parties before the vice chancellor, the injunction was refused. The complainant then filed a new bill before the chancellor, but without disclosing the fact of the previous application to the vice chancellor, and obtained an order to show cause why an injunction should not be granted.

*E. T. Pinckney*, for the complainant.

*J. R. Hedley*, for the defendant.

THE CHANCELLOR. After an application had been made to the vice chancellor in open court, and been denied by him, it would have been irregular to bring the same question before the chancellor during the pendency of that suit, except by way of appeal. The nature of the application in this case, however, was not such as to render an appeal absolutely necessary ; but the complainant was at liberty to discontinue that suit, on payment of the costs which had accrued therein, and to file a new bill before the chancellor. As the affidavits on the part of the defendant do not state that the former suit is still pending, I

must, for the purpose of this application, presume it was regularly discontinued before the filing of the present bill. The case must therefore be disposed of upon the merits.

If the erection of the building in question is not such a nuisance as this court would restrain if the premises belonged to the defendant absolutely, the fact that the landlord has other lots which may be affected by the occupation of the rear of this lot as a livery stable, cannot entitle him to the remedy sought by this bill. It is not pretended that there was any mistake in drawing the lease, or that it does not contain the whole of the agreement between the parties. And if the landlord wished to prevent the tenant from using the property in the manner now contemplated, which is neither illegal or immoral, he should have made such a restriction a part of the agreement, by the insertion of a proper clause to that effect in the lease.

The only question presented by the agreement between the parties as evidenced by the written contract, is, whether the erection of the livery stable on the rear of this lot is either legal or equitable waste. If the taking up of the fence, and the removal of the out building a few feet from its former location, was waste, the complainant had a perfect remedy at law for that injury. This court only interferes to prevent *future* waste; except in cases where the complainant has no remedy at law, or a discovery is necessary, or where there is some other ground for equitable interference. In ordinary cases, the account for waste already committed is merely incidental to the relief by injunction against future waste, and is directed upon the principle of preventing a needless multiplication of suits.

Some of the ancient cases restrict the tenant within very narrow limits, as to his right to alter or improve the premises held by him without subjecting him to an action of waste, or to a forfeiture of the estate. It was for a time questionable whether a tenant or a copy holder could erect a new building upon the premises, without subjecting himself to a loss of the property. (*See Ward's case*, 4 *Leon.* 241 ; *Gray* v. *Ulysses*, 2 *Dyer*, 211, *b. note; Paston* v. *Utberts, Littleton's R.* 264 ; *Hutton*, 102, *S. C.* ; *Cecil* v. *Cave*, 2 *D'Auver's Abr.* 194 ; 2 *Roll's Abr.* 815 ; *Coke Litt.* 53, *a; Keilwey*, 38 ; *Darcy* v. *Askwith*,

*Hobart's Reports*, 234.) But whatever doubts may have formerly been entertained on this subject, I have no hesitation in saying, that by the law of this state, as now understood, it is not waste for the tenant to erect a new edifice upon the demised premises; provided it can be done without destroying or materially injuring the buildings or other improvements already existing thereon. I admit he has no right to pull down valuable buildings, or to make improvements or alterations which will materially and permanently change the nature of the property, so as to render it impossible for him to restore the same premises, substantially, at the expiration of the term. But to apply the ancient doctrines of waste to modern tenancies, even for short terms, would in some of our cities and villages put an entire stop to the progress of improvement, and would deprive the tenant of those benefits which both parties contemplated at the time of the demise, without any possible advantage to the owner of the reversion. The modern cases as to the right of the tenant to remove fixtures, or even some kinds of buildings erected for the purposes of trade or manufacture, show the change which has gradually, if not imperceptibly, taken place in the law upon this subject. And upon the principles of these modern cases, it cannot be waste to make new erections, upon the demised premises, which may be removed at the end of the term without much inconvenience, leaving the property in the same situation it was at the commencement of the tenancy; and the materials of which new buildings, if left on the premises, would more than compensate the owner of the reversion for the expenses of their removal. That is the nature of the building which the defendant is about to erect on the rear of this lot. And if the landlord insists upon its removal at the end of the term, the lessee will undoubtedly be pleased to obtain such a privilege, which most tenants are anxious to secure by an express stipulation in their lease.

Even if the new edifice is permitted to remain, the complainant will not be compelled to use it as a livery stable. He may, at the end of the term, convert it to some use which

will be more agreeable to the tenants of the adjacent lots, and to the occupant of the house upon the front of this.

The complainant is not entitled to an injunction ; and the order to show cause must be discharged, with costs.