Tate *v.* Field.

JOSEPH TATE

*v.*

FRANK S. FIELD et al.

[Filed May 3d, 1897.]

1. Where there is a distinct charge in the bill of a matter within the personal knowledge of the defendants, and they are asked to answer, a failure to answer a distinct charge within their knowledge is an admission of the truth of the allegation.

2. Equity, having jurisdiction of a bill for foreclosure, may award damages for waste committed by purchasers from the mortgagor, whereby the security was rendered inadequate.

Heard on bill, answer and proofs.

The bill is in the ordinary form to foreclose a purchase-money mortgage given by the Powerville Felt Roofing Company (Limited) to the complainant, Tate, as part consideration of lands conveyed by Tate to the company. It is dated the 25th of April, 1891, and covers five lots of land lying in a body, situate near Chatham, in the county of Morris, conditioned for the payment of $800 in three years, with interest, with a special proviso that the mortgagor should erect upon the lands, within ninety days, a building of the value of at least $500. The bill shows that the corporation mortgagor erected a building upon the premises worth at least $500, and afterwards went into the hands of a receiver, and that the premises were sold by the receiver in the month of July, 1894, subject to the mortgage to one Garret

Tate v. Field.

Smith, who purchased and held them in trust for the three defendants, Field, Haynes and White, composing the firm of F. S. Field & Company.

The bill further charges that between the time of the purchase by Smith for Field & Company and the last day of the year 1894, the defendants—Smith, Field, Haynes and White—combining to defraud the complainant,

"took or tore down and removed from the said mortgaged premises the said building so as aforesaid erected thereupon in accordance with the terms and conditions of the said bond and mortgage, and carried or removed the same to the premises of the said Field, Haynes & White, in or near Boonton, in the county of Morris, and re-erected the said building thereupon."

The bill then charges that the lands without the building are not worth the amount of the mortgage; and, besides the ordinary prayer for foreclosure and sale, prays that Smith, Field, Haynes and White may be ordered and decreed to return and restore the building to the mortgaged premises, or to pay to the complainant the value of the said building at the time of its removal, or to pay to complainant any and all deficiency that may arise upon the sale of the mortgaged premises in the principal, interest and costs due upon the mortgage.

The defendants last named are apparently non-residents, having been brought in by publication, and have joined in an answer, in which it is admitted that Smith purchased the premises on behalf of Field, Haynes and White. With regard to the charge that they removed the building from the premises, they answer in this wise:

"These defendants, further answering, say that there was subsequently removed from the mortgaged premises a building which had been erected thereon by the Powerville Felt Roofing Company, which building stood upon posts driven in the ground, and was otherwise unattached to the mortgaged premises, and so built that it could be removed without injury to the mortgaged premises. And these defendants deny that Garret Smith removed the said building or had any knowledge of the removal thereof until he was informed thereof by the complainant; and this defendant, Frank S. Field, for himself answering, says that he was present at the removal of the said building, and supposed at the time he had a perfect right to remove the same, and still insists that the building was rightly removed."

They further deny, by their answer, that the building was part and parcel of the mortgaged premises, and deny that the removal of the same injured the security of the complainant's mortgage; deny the insufficiency of the premises, and that the removal of the building was a fraud. They then, by their answer, set up that the remedy of the complainant is by an action at law, and that no decree can be made in this court against defendants or either of them in that behalf.

*Mr. Samuel J. MacDonald,* for the complainant.

*Mr. Francis J. Swayze,* for the defendants.

PITNEY, V. C.

No proof was offered by complainant at the hearing of the actual removal of the building by either of the defendants. He relied in that behalf entirely upon the allegation of the bill and the failure to deny by Field, Haynes and White that they removed it.

Defendants contend that the failure to deny and the partial admission by Field is not sufficient to sustain the issue in this respect. But I think there is no issue. There is a distinct charge in the bill of a matter within the personal knowledge of the defendants, and they are asked to answer; and in such case a failure to answer a distinct charge within the knowledge of defendants is an admission of the truth of the allegation. Besides, the peculiar language in which Mr. Field's statement is couched, namely, "that he was present at the removal of the said building and supposed at the time he had a perfect right to remove the same," amounts to an implied admission on his part of its removal.

The point that the removal of the building was justifiable as against complainant was not seriously pressed.

The principal question litigated was the right of the complainant to relief in this court for the waste committed by the defendants. Complainant contends that the court, having acquired jurisdiction of the cause for the purpose of the fore-

Tate *v.* Field.

closure of a mortgage in which the question whether the prem-
ises without the building are sufficient to secure the amount due
the complainant will be necessarily determined in the orderly
course of the suit by a sale of the premises, should proceed and
give complete relief by holding the defendants who have com-
mitted the waste liable in this suit to make up the loss to the
complainant to an extent not exceeding the deficiency to arise
from the sale of the premises, and also not exceeding the value of
the building removed.

The defendants deny the jurisdiction of the court in this be-
half, and contend that under the cases of *Jackson* v. *Turrell, 10
Vr. 329,* and *Schalk* v. *Kingsley, 13 Vr. 32,* the complainant has
complete remedy at law, and this court should not entertain jur-
isdiction.

The general rule undoubtedly is that this court will not, under
ordinary circumstances, entertain a pure bill for an account of
waste in behalf of a person who would be entitled to an action
at law for damages on that account.   But it is equally true that
where this court has acquired jurisdiction of a cause for any
purpose in which a matter of waste is incidentally involved, it
will, in general, proceed to ascertain the amount of the waste
if necessary in order to do complete justice.

The usual mode of acquiring jurisdiction in suits involving
waste is by an application for an injunction to stay waste, and
in such case, when the injunction has been granted and the
waste stayed, the court will, as an incident to the relief and for
the purpose of preventing multiplicity of suits, take an account
of the waste in that suit.   And such are the authorities cited by
the defendants, the leading one being *Jesus College* v. *Bloome, 3
Atk. 262.*   The cases are collected in the note to the famous case
of *Garth* v. *Cotton,* imperfectly reported in *1 Ves. 524, 1 Dick.
183,* and *3 Atk. 751,* but reported fully in *1 Lead. Cas. Eq.
\*697.*   Lord Hardwicke, who refused jurisdiction in *Jesus Col-
lege* v. *Bloome,* assumed it in *Garth* v. *Cotton.*   The latter was a
case where the complainant could not maintain an action at law,
but he therein discussed *Jesus College* v. *Bloome,* and states the
ground upon which it was decided.

In *Whitfield* v. *Bewit, 2 P. Wms. 240,* an account was allowed of timber cut as a mere incident to a bill for discovery; there was, however, an injunction against opening mines. And see *2 Waterm. Eden Inj. *244, *249,* and *Lee* v. *Alston, 1 Bro. Ch. C. *195.*

I have said that the usual mode of acquiring jurisdiction in such a case is the filing of a bill for an injunction, but I am unable to perceive that there is any peculiarity in a bill for an injunction by which an account of the waste committed is justified rather than by any other ground of jurisdiction. The question is, has the court jurisdiction independent of the mere act of waste, and if so, then arises the question whether it is necessary or convenient for finally and completely disposing of the subject-matter of the suit that the question of the amount of the waste should be dealt with. This is the view of the learned author of the American notes to the *Leading Cases in Equity.* At *p. 1024 (4th Am. ed.) 1 Lead. Cas. Eq.,* after quoting Chancellor Walworth, in *Winship* v. *Pitts, 3 Paige 259* (at *p. 261*), where he says: "This court only interferes to prevent future waste, except in cases where the complainant has no remedy at law, or a discovery is necessary, *or where there is some other ground for equitable interference.* In ordinary cases, the account for waste already committed is merely incidental to the relief by injunction against future waste, and is directed upon the principle of preventing a needless multiplication of suits," the author proceeds: "The rule, however, is general that, although the recovery of damages for waste is not a substantive ground for a bill in equity, yet if the court has jurisdiction of the subject upon another ground it will decree an account of the waste committed." And here he instances the case of waste by one tenant in common, where an account is taken of the waste in partition between the parties, and cites *Backler* v. *Farrow, 2 Hill Ch. 111.*

Vice-Chancellor Bird, in *Jackson* v. *Beach, 3 Atl. Rep. 375,* holds that the power of the court of chancery to take notice of waste by one co-tenant against the other and to give a remedy on a bill for partition, is not derived from section 15 of the act respecting partition, but inheres in the court, independent of

Tate *v.* Field.

that act.  That was a case of partition, and he says: "This court, having jurisdiction of the principal question, would not send a party entitled to relief to the law courts.  Its purpose is to avoid a multiplicity of suits."

In the case in hand, the right of the complainant to come into this court for equitable relief upon his mortgage is undoubted, and his right to recover against the defendants for waste, in an action at law, is limited to the amount which his security will be diminished by the waste.  That amount can only be ascertained satisfactorily by a sale of the premises under foreclosure. The difficulty of ascertaining it in an action at law was clearly manifested in the opinion of Mr. Justice Van Syckel, in *Schalk* v. *Kingsley, supra.*  So that one of the material matters to be determined in an action at law will necessarily be determined here in this suit.  Now, it seems to me it would be an unjustifiable limitation upon the duty of this court to do complete justice, to say that it should not proceed to ascertain the extent of the waste in this case, if practicable.  In this connection it must be remembered that the case is not precisely within *Jackson* v. *Terrell* and *Schalk* v. *Kingsley, supra.*  In those cases the actions were brought against persons not in possession or claiming to be the owners of the premises.  Here, the persons committing the waste were the owners of the premises, and were either in possession or entitled to be in possession, so that it cannot be said that it has been decided by those cases that an action would lie against them by the mortgagee.  Then, again, apparently, they are non-residents of this state and the complainant would be obliged to sue them in a foreign state and prove his case by witnesses in this state.

I will advise a decree for the foreclosure and immediate sale of the premises, reserving the ascertainment of the amount of the injury due to the waste until after the premises have been sold and the deficiency, if any, ascertained.